1
2
3
4

JS-6

5      **UNITED STATES DISTRICT COURT**

6      **CENTRAL DISTRICT OF CALIFORNIA**

7

8    LETICIA MAGDALENO, et al.                )    NO. CV 08-07019 SJO (AGRx)
                                              )
9              Plaintiffs,                    )    ORDER GRANTING PLAINTIFFS' MOTION
                                              )    TO REMAND TO STATE COURT
10            v.                              )
                                              )
11   SOUTHERN CALIFORNIA REGIONAL             )
     RAIL AUTHORITY, et al.                   )
12                                            )
               Defendants.                    )
13   _____ )

14          This matter is before the Court on Plaintiffs Leticia Magdaleno and Juvenal Magdaleno's

15   (collectively, the "Magdalenos") Motion to Remand to State Court, filed November 21, 2008.

16   Defendant Southern California Regional Rail Authority ("SCRRA") and Cross-Defendant Connex

17   Railroad, LLC ("Connex") (collectively, the "Defendants") filed Oppositions, to which Plaintiffs

18   replied.  The Court found this matter suitable for disposition without oral argument and vacated

19   the hearing set for December 22, 2008.  *See* Fed. R. Civ. P. 78(b).  For the following reasons,

20   Plaintiffs' Motion is GRANTED.

21   I.     BACKGROUND

22          On September 12, 2008, the Magdalenos' daughter, Aida Magdaleno, died in a collision

23   between a SCRRA passenger train, operated by an employee of Connex, and a freight train in

24   Chatsworth, California.  (*See* Compl. Damages ¶¶ 7–11; Southern California Regional Rail

25   Authority dba Metrolink's Cross-Claim Against Connex Railroad, LLC ("SCRRA Cross-Claim")

26   ¶ 10.)   The train collision resulted in twenty-five deaths and injured more than 100 other

27   passengers.  (*See* SCRRA Cross-Claim ¶ 11.)

28

On September 23, 2008, the Magdalenos filed this suit in the Superior Court of California for the County of Los Angeles, alleging claims for negligence and negligent hiring under California state law.[1] (*See* Compl. Damages.) On October 23, 2008, SCRRA removed the action to this Court on the basis of federal question jurisdiction, asserting that the case presented a "substantial question of federal law," as "it appears" that resolution of the Magdalenos' claims will require the interpretation and application of the limitation of damages provision of the Amtrak Reform and Accountability Act of 1997 (the "Amtrak Act"), 49 U.S.C. § 28103(a)(2). (Notice Removal ¶¶ 6, 8.) Because the limitation of damages provision of the Amtrak Act caps the "aggregate allowable awards to all rail passengers, against all defendants, for all claims . . . arising from a single accident or incident" at $200 million, SCRRA argued that, given the magnitude of injuries from the September 12, 2008 train collision, the extent of lawsuits that have already been filed, and the indication that many additional lawsuits will be filed, the damages to be awarded in individual cases arising from the incident, including this one, "will turn on the application of [this] federal law." (Notice Removal ¶¶ 8, 13, 17.) The Magdalenos now move to remand the case to the Superior Court of the State of California for the County of Los Angeles. (Pls.' Notice Mot. & Mot. Remand State Court; Mem. P. & A. ("Pls.' Mot.") 2.)

II.   DISCUSSION

The Magdalenos argue that the Amtrak Act does not apply to this case and even if it did, Defendants have failed to meet their burden to show that the case falls into the limited "embedded federal issue" category of federal question cases because the only possible implication of federal law is a cap on total damages available to all claimants after the Magdalenos' individual right to and amount of damages have been determined pursuant to state law. (*See* Pls.' Mot. 7–8; Pls.' Omnibus Reply Southern California Regional Rail Authority dba Metrolink & Connex Railroad's

---

[1] The Magdalenos' Complaint names SCRRA as the sole known defendant. (*See* Compl. Damages ¶¶ 3–4.) On November 21, 2008, SCRRA filed a cross-claim against Connex, alleging that SCRRA is entitled to indemnity from Connex pursuant to the terms of a contract between the parties in which Connex agreed to provide operator services for SCRRA. (*See* SCRRA Cross-Claim ¶¶ 8, 13.)

Opp'n Mot. Remand ("Pls.' Reply") 1–4.)  SCRRA and Connex oppose remand, arguing that both SCRRA and Connex are protected by the Amtrak Act's limitation on damages provision and, thus, the action falls under the "embedded federal issue" doctrine, because, given the available information on the likely extent of litigation arising from the September 12, 2008 collision, the court that decides this case must determine a substantial question of federal law, namely whether and how to apply the Amtrak Act's $200 million limit on aggregate damages.  (Mem. P. & A. Cross-Def. Connex Railroad, LLC Opp'n Pls.' Mot. Remand State Court ("Connex Opp'n") 2–3, 5–9, 12; Southern California Regional Rail Authority's Opp'n Pls.' Mot. Remand ("SCRRA Opp'n") 3–7.)

Under 28 U.S.C. § 1441, the removal statute, an action is removable to federal court only if it might have been brought there originally.  *See* 28 U.S.C. § 1441(a).  The removal statute is "strictly construe[d] . . . against removal jurisdiction."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal . . . ."  *Id.* (internal citation omitted).  "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  *Id.* (internal citations omitted).

28 U.S.C. § 1331 gives federal courts "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  A case "arises under" federal law if a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action" or that the "plaintiff's right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties."  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13, 27–28 (1983); *see Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006) (internal citation omitted).

With regard to the second category of cases "arising under" federal law, "embedded federal issue" cases, the presence of a federal issue is not "a password opening federal courts to any state action embracing a point of federal law."  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  "[C]ountless claims can be said to depend in some way on federal propositions, yet not all such cases 'arise under' federal law."  *Hunter v. United Van*

1   *Lines*, 746 F.2d 635, 645 (9th Cir. 1985).  Rather, to qualify for federal question jurisdiction, a state

2   law claim must "necessarily raise a stated federal issue, actually disputed and substantial, which

3   a federal forum may entertain without disturbing any congressionally approved balance of federal

4   and state judicial responsibilities."  *Grable*, 545 U.S. at 314.  In order for a federal issue to be

5   substantial, it must "indicat[e] a serious federal interest in claiming the advantages thought to be

6   inherent in a federal forum." *Id.* at 313 (internal citations omitted).  The absence of a federal cause

7   of action is a relevant factor to be considered in assessing whether a federal issue is substantial.

8   *See Grable*, 545 U.S. at 318; *Merrell Dow Phams. Inc. v. Thompson*, 478 U.S. 804, 811 (1986).

9

10   Here, the Magdalenos' right to relief for their state law claims of negligence and negligent

11   hiring appears to require the resolution of a federal issue, whether and how to apply the Amtrak

12   Act's limitation on damages provision.  Despite the Magdalenos' argument that their Complaint

13   contains no reference to federal law, the Defendants correctly point out that the Magdalenos

14   cannot "defeat removal by omitting to plead necessary federal questions in [their] complaint." *See*

15   *Franchise Tax Bd.*, 463 U.S. at 24 (internal citation omitted), Pl.'s Mot. 5; Connex Opp'n 13.  Given

16   the broad language of the Amtrak Act's limitation on damages provision, which extends to the

17   aggregate awards to "all rail passengers, against all defendants, for all claims . . . arising from a

18   single accident," and that Defendants are at least arguably covered under the Act, a court

19   awarding damages to the Magdalenos for their state law claims would need to consider whether

20   the damages cap of the Amtrak Act applies and if so, how it affects such an individual lawsuit that

21   seeks damages less than the $200 million limit for aggregate damages where the total of all

22   pending and future claims may exceed this limit.  *See* 42 U.S.C. §§ 24102, 28103.  The presence

23   of a federal issue, however, is not the end of the inquiry, as "it takes more than a federal element

24   'to open the arising under' door." *See Empire*, 547 U.S. at 701 (quoting *Grable*, 545 U.S. at 313).

25   Despite the presence of a federal issue that must be addressed, this case fails to meet the

26   requirements for the "embedded federal issue" category of cases, because the federal issue is not

27   substantial.  The limitation on damages provision of the Amtrak Act recognizes the importance of

28

4

passenger and commuter rail services in the United States, seeking to ensure their continued availability by limiting their providers' accident liability. *See* 49 U.S.C. §§ 24101(a)(2)(5), 28103(a)(2); Notice Removal ¶ 12; SCRRA Opp'n 5. Although the United States undoubtedly has some interest in ensuring the continued viability of passenger and commuter rail service throughout the United States, which helps alleviate overcrowding of alternative means of transportation, assists urban dwellers, and fosters energy conservation, *see* 49 U.S.C. § 24101(a)(2)(5), such interests are not significant or serious enough to warrant turning a state tort claim into a federal case. *See Empire*, 547 U.S. at 701. As such, the case does not "indicat[e] a serious federal interest in claiming the advantages thought to be inherent in a federal forum" and, thus, fails to implicate federal question jurisdiction. *Grable*, 545 U.S. at 313.

This conclusion is supported by the Amtrak Act's failure to create a federal cause of action, mandate original federal jurisdiction, or provide for removal jurisdiction, which suggests that Congress did not find the federal interest significant enough to require a federal forum. *See Grable*, 545 U.S. at 318; *Merrell Dow Phams. Inc.*, 478 U.S. at 811. In fact, SCRRA points to a "closely analogous federal statute with a liability limiting provision," the Price-Anderson Act, 42 U.S.C. § 2210, which provides an aggregate liability cap of $560 million for claims arising from a nuclear accident that is similar to the Amtrak Act's aggregate liability cap of $200 million for all claims arising from a single rail accident. *See* 42 U.S.C. § 2210(e); SCRRA Surreply 1–2. SCRRA emphasizes that Congress, realizing that it did not provide a method for handling an aggregate liability cap where there may be large numbers of suits in different jurisdictions, amended the Price-Anderson Act to give original jurisdiction to the district court in which the relevant incident occurred, as well as the right to remove or transfer to that court, to ensure more uniform and effective distribution of funds. *See* 42 U.S.C. § 2210(n)(2); SCRRA Surreply 3–4. Similarly, SCRRA, seeking to show the importance Congress places on railroad cases, stresses that Congress has provided federal courts with original jurisdiction in other types of railroad personal injury cases, such as those under the Federal Employers' Liability Act. (*See* SCRRA Opp'n 7.) Yet the fact that Congress has provided federal courts with original jurisdiction in other

types of railroad cases and provided an explicit right of removal to federal courts under a similar statutory scheme for nuclear accident cases only highlights that Congress did not do so in the Amtrak Act.  The Court's own research likewise uncovered the Air Transportation Safety and System Stabilization Act of 2001, amended by the Aviation and Transportation Security Act of 2001, which limits the liability of air carriers, air manufacturers, and those with a property interest in the World Trade Center to their amount of liability insurance coverage, explicitly creates a federal cause of action for damages arising out of the events of September 11, 2001, and expressly gives the Southern District of New York "original and exclusive jurisdiction over all actions brought for any claim . . . resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."  *See* Air Transportation Safety and System Stabilization Act of 2001, Pub. L. No. 107-42, § 408 (West 2001), *amended by* The Aviation and Transportation Security Act of 2001, Pub. L. No. 107-71, § 201 (West 2001).  Thus, this act, like the Amtrak Act, is a federal law that limits liability arising from a single event, but, unlike the Amtrak Act, goes further, providing for a federal cause of action and exclusive "original and exclusive jurisdiction" to a single federal court for cases arising from the incident.  *Compare* Air Transportation Safety and System Stabilization Act of 2001, Pub. L. No. 107-42, § 408 (West 2001), *amended by* The Aviation and Transportation Security Act of 2001, Pub. L. No. 107-71, § 201 (West 2001), *with* 49 U.S.C. § 28103.  Therefore, if Congress deems it appropriate for federal courts to exercise jurisdiction over a certain type of case, it knows how to do ensure that this occurs.  Congress, however, did not so provide in the Amtrak Act.

Finally, given that the Magdalenos' right to and extent of recovery on their causes of action are to be determined solely according to state law, which only then might be adjusted by application of the Amtrak Act's damages cap, the single federal issue presented "do[es] not fundamentally change the state tort nature of the action."  *See Merrell Dow Pharms., Inc.*, 478 U.S. at 814 n.12 (citing *Moore v. Chesapeake & O. Ry. Co.*, 291 U.S. 205, 216–17 (1934)).  This Court sees no reason that the state court cannot interpret and apply the limitation on damages provision of the Amtrak Act.  Although Defendants point out a number of practical problems that

could arise from failure to properly address the Amtrak Act's damages cap, including that later-filing plaintiffs could be left without recovery once the $200 million limit is reached, they fail to establish a sufficient reason why these questions must be addressed by a federal, as opposed to a state, court.  (*See* Notice Removal ¶ 19; Connex Opp'n 2, 14.)  As such, the Court finds that "[t]he state court in which [this] suit was lodged is competent to apply federal law, to the extent it is relevant . . . ."  *See Empire*, 547 U.S. at 701.

Because Defendants have failed to establish a "compelling federal judicial interest in embracing this case as a federal question," *see Campbell v. Aerospace Corp.*, 123 F.3d 1308, 1315 (9th Cir. 1997), the Court finds that Defendants have not met their burden of showing that removal was proper on the basis of federal question jurisdiction.  Cognizant of the "strong presumption" against removal jurisdiction, the Court GRANTS Plaintiffs' Motion to Remand to State Court.  *See Gaus*, 980 F.2d at 566.

Furthermore, although an order remanding a case to state court may require the removing party to pay the other party's attorney's fees associated with the removal, *see* 28 U.S.C. § 1447(c), because the Magdalenos have expressly refused to request attorney's fees, the Court declines to award any fees.  (*See* Pls.' Mot. 10–11.)

III.   RULING

For the foregoing reasons, Plaintiffs' Motion is GRANTED.  This matter is hereby remanded to the Superior Court of the State of California for the County of Los Angeles.

IT IS SO ORDERED.

January 8, 2009                                        /S/  S. James Otero

                                                   _____
                                                         S. JAMES OTERO
                                                   UNITED STATES DISTRICT JUDGE